In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3158

NATIONAL CASUALTY COMPANY, et al.,

*Plaintiffs-Appellees*,

*v.*

WHITE MOUNTAINS REINSURANCE COMPANY OF AMERICA, now known as SIRIUS AMERICA INSURANCE COMPANY,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:09-cv-02278-HAB-DGB — **Harold A. Baker**, *Judge*.

ARGUED NOVEMBER 27, 2012 — DECIDED OCTOBER 30, 2013

Before FLAUM and TINDER, *Circuit Judges,* and THARP, *District Judge*.[*]

TINDER, *Circuit Judge*. The wrongful convictions of Gordon Randy Steidl and Herbert Whitlock are a sad chapter in the history of Edgar County, Illinois. Steidl and Whitlock

[*] Of the Northern District of Illinois, sitting by designation.

were convicted in 1987 of murdering a local married couple, and their convictions were largely based on the testimony of two supposed eyewitnesses who connected the two men to the crimes. Only long after Steidl's and Whitlock's convictions did a subsequent investigation reveal that much of the key testimony had been perjured, and furthermore, a great deal of exculpatory evidence had been withheld from the two men's defenses. Eventually, these revelations led to the release of the two men as well as dismissal of all charges against them. By then, Steidl had spent almost seventeen years in an Illinois prison; Whitlock had spent close to twenty-one.

This unfortunate tale of Steidl's and Whitlock's wrongful imprisonment has provided the backdrop for much litigation in the years following their release from prison. Steidl was the first to file a lawsuit on May 27, 2005—approximately one year after his release from prison—against the City of Paris, Illinois, the city in Edgar County where the murders occurred; Edgar County, Illinois; several Illinois State Police officers; two Paris police officials; and Michael McFatridge, the former Edgar County State's Attorney who had been responsible for prosecuting him, and whom Steidl alleged had been the mastermind behind the plot to frame him for murder. Against these defendants, Steidl alleged false imprisonment, due process, malicious prosecution, intentional infliction of emotional distress, and conspiracy claims under state and federal law. Whitlock followed Steidl's lead and filed a similar lawsuit upon his release from prison three years later. By March 2013, both Steidl and Whitlock had settled their lawsuits with all defendants.

Although Steidl's and Whitlock's lawsuits have entirely settled, the involved parties have not yet been able to put this matter fully behind them. Steidl's and Whitlock's suits proved to be only the tip of the litigation iceberg. Because the defendants in the two lawsuits were all public officials and public entities, disputes soon arose over who bore the responsibility for paying the defense costs. The disputes have been particularly heated with regard to the costs incurred by two defendants, Michael McFatridge and Edgar County. Indeed, three different cases have been litigated regarding who is responsible for paying McFatridge's and Edgar County's defense costs. This case is the last one remaining of the three.

The first of the three spinoff defense-cost cases was brought in 2007 by National Casualty Company (hereinafter "National Casualty"), the plaintiff in the present case, in federal district court. In that case, *National Casualty Co. v. McFatridge*, 604 F.3d 335, 337 (7th Cir. 2010) (hereinafter "*McFatridge I*"), National Casualty sought a declaratory judgment that it was not liable for the defense costs of either McFatridge or Edgar County under a 1989 insurance policy that its predecessor had issued to "County of Edgar S.D." *Id*. Although National Casualty contested its liability for McFatridge's and Edgar County's defense costs, National Casualty nonetheless agreed to pay for the defense costs of both McFatridge and Edgar County under a reservation of rights until the coverage issue was resolved. In 2010, after reading the language of the National Casualty policy in question, our court agreed with National Casualty that neither McFatridge nor Edgar County were covered by the 1989 policy, and as a result, we held that National Casualty had

"no duty to defend or indemnify McFatridge or Edgar County." *Id*. at 345.

The second of the three spinoff defense-cost cases was brought by McFatridge himself in Illinois state court in 2010. There, McFatridge asked the court to order the Illinois Attorney General "to approve all of McFatridge's reasonable litigation expenses and attorney fees in defense of the Steidl and Whitlock suits as they are incurred by him." *McFatridge v. Madigan*, 989 N.E.2d 165, 168–69 (Ill. 2013). In May of this year, the Illinois Supreme Court affirmed the state trial court's dismissal of McFatridge's case, finding that McFatridge had failed to show "a clear duty on the part of the Attorney General to approve payment by the state of [his] defense expenses." *Id.* at 173.

The third of the three spinoff defense-cost cases—and the case at hand—was filed by National Casualty in 2009. In its complaint, National Casualty asked the federal court for another declaratory judgment. But instead of asking the court to find National Casualty not liable for McFatridge's and Edgar County's defense costs, National Casualty asked the court to find another insurer liable for these costs. Specifically, National Casualty asked the court to find that White Mountains Reinsurance Company (hereinafter "White Mountains") had "a duty to defend Edgar County and McFatridge" under a policy issued by its predecessor to "Edgar County Sheriff's Department & Edgar County" in 1986. In addition to seeking a court order for White Mountains to "assume the defense of Edgar County and McFatridge … and assume all costs of defense," National Casualty further sought a court order for White Mountains to reimburse National Casualty for its defense expenditures

on Edgar County and McFatridge prior to the resolution of *McFatridge I.* Appealing to equity, National Casualty pointed out in its complaint that it had heretofore paid the defense costs for Edgar County and McFatridge under a reservation of rights. But once a district court had declared National Casualty not liable for these defense costs, and particularly once our court affirmed the district court in the *McFatridge I* decision, National Casualty believed it was entitled to reimbursement by the entity actually liable for McFatridge's and Edgar County's defense costs. White Mountains, according to National Casualty, was the insurer actually liable.

This third spinoff case is perhaps the most procedurally complicated one. Unfortunately, the procedural complications have only continued to multiply throughout the case's pendency. National Casualty principally sought relief from White Mountains, but it also sued McFatridge, Edgar County, Steidl, and Whitlock since it had expended funds on McFatridge's and Edgar County's behalf in the Steidl and Whitlock lawsuits despite the fact that National Casualty had no duty to defend either party. White Mountains, in turn, filed a cross-claim against McFatridge and Edgar County, asking the court to declare that it had no duty to defend them under the 1986 policy. White Mountains also filed a counterclaim against National Casualty, asking the court to declare that it had no duty to reimburse National Casualty for its prior expenditures on McFatridge's and Edgar County's defense costs.

Several months into the litigation, McFatridge and Edgar County filed a motion for summary judgment against White Mountains, asking the court to find that, as a matter of law, "White Mountains ha[d] a duty to defend Mr. McFatridge

and the County in the lawsuits filed by plaintiffs Steidl and Whitlock." White Mountains responded a month later by filing a cross-motion for summary judgment against McFatridge, Edgar County, and National Casualty, asserting that White Mountains had no duty to pay McFatridge's and Edgar County's defense costs, and thus no duty to reimburse National Casualty. Not to be left behind, National Casualty filed its own cross-motion for summary judgment the following month, arguing that White Mountains owed a legal duty to defend McFatridge and Edgar County, and as a result, "must immediately assume paying all costs of [their] defense" and "must reimburse [National Casualty] for all defense costs."

Confronted with six parties and three cross-motions for summary judgment, the district judge, in his own words, faced a "thicket of filings." After sorting through the thicket, however, the judge realized that the motions all asked him to address the same legal issues: whether White Mountains had a duty to defend McFatridge and/or Edgar County under the 1986 policy, and if so, whether White Mountains had a duty to reimburse National Casualty for its previous expenditures on McFatridge's and/or Edgar County's defense costs. On August 31, 2011, the district judge decided both legal issues against White Mountains. In granting summary judgment for McFatridge, Edgar County, and National Casualty, the district court reached the following conclusions:

1. White Mountains owes a duty to defend McFatridge and Edgar County in the Steidl and Whitlock lawsuits,

2. That this duty to defend exists under White Mountains' 1986 Policy (83LE006626);

3. That White Mountains must immediately
   begin paying all costs of defense in the
   Steidl and Whitlock lawsuits, and

4. That White Mountains must reimburse National Casualty for all defense fees and
   costs expended since White Mountains was
   on notice of the underlying claims.

As such, the district court entered judgment in favor of McFatridge, Edgar County, and National Casualty and against White Mountains. Shortly thereafter, the district court determined that no further proceedings were warranted with respect to defendants Steidl and Whitlock, dismissed the two men from the action, and terminated the case. White Mountains, in turn, filed a timely appeal.

During the two years that have passed since White Mountains filed its appeal with our court, the case has only become more complicated. The appeal began in a normal fashion: White Mountains filed its first brief with our court in July 2012, and by early August, McFatridge, Edgar County, and National Casualty had all filed their response briefs. But on August 14, 2012, White Mountains filed an unexpected motion with our court. Styled as a motion for an extension of time to file a reply brief, White Mountains notified us that it had entered into an agreement with defendant-appellee McFatridge, "which settled all issues on appeal between the parties." Although we granted White Mountains' motion the same day, White Mountains filed a second motion with our court ten days later, requesting "to voluntarily withdraw its appeal as to Michael McFatridge" pursuant to Fed. R. App. P. 42(b). Because White Mountains reaffirmed in this motion that it had resolved all issues between itself

and McFatridge, we again granted White Mountains' motion the same day and dismissed McFatridge from the appeal.

After McFatridge's dismissal in August 2012, the appeal proceeded in a routine manner for the next several months. The parties concluded their briefing in September, and we heard oral argument on November 27, 2012, with White Mountains as the appellant and Edgar County and National Casualty as the only two remaining appellees. Then in April of this year, we received another unexpected filing. This time, White Mountains filed a joint motion with defendant-appellee Edgar County to voluntarily dismiss the appeal with respect to Edgar County because "the claims between these parties ha[d] been resolved by settlement." We granted their motion on April 8, 2013.

Without a doubt, White Mountains' voluntary dismissals had significantly diminished the number of appellees. Yet we soon began to wonder whether White Mountains' voluntary dismissals had also significantly diminished the case before our court. With just one of the three initial appellees remaining, it appeared that just one of the four original issues remained for our court to decide on appeal—whether White Mountains must reimburse National Casualty for its expenditures on McFatridge's and Edgar County's defense. At first glance, the first three conclusions of the district court appeared to no longer be in dispute. White Mountains had voluntarily chosen to dismiss McFatridge and Edgar County from this appeal; any controversy regarding White Mountains' liability for their defense costs now appeared to be moot. National Casualty had already raised similar concerns with our court on October 4, 2012, shortly after White Mountains voluntarily dismissed McFatridge from this appeal. As

such, we ordered the parties to submit supplemental briefing addressing these concerns.

After evaluating the parties' supplemental briefs, we conclude that our jurisdiction to review the first three conclusions in the summary judgment order remains intact. The law of the case doctrine binds a tribunal to its prior decisions regarding the case, as well as a higher tribunal's decisions about the matter, but it can never serve to bar a higher court's review of a lower court's decision. Accordingly, we proceed to review all four of the district court's holdings on the merits.

In so reviewing, we conclude that White Mountains owed a duty to defend McFatridge and Edgar Country in the Steidl and Whitlock lawsuits, and that this duty arose from White Mountain's 1986 policy. Therefore, we affirm the judgment of the district court.

## I

White Mountains has privately resolved all controversies over the first three holdings of the district court with McFatridge and Edgar County through settlement. The exact terms of the two settlement agreements remain undisclosed, so we have no idea how the parties actually resolved the extent of White Mountains' duty to defend McFatridge and Edgar County. National Casualty argues that under the doctrine of law of the case, we may not review the district court's judgment for McFatridge. It asserts that because White Mountains voluntarily dismissed its appeal against McFatridge and Edgar County, the part of the district court's judgment as to these two parties must stand as we adjudicate the dispute between White Mountains and National

Casualty, lest the district court be required to enter a judg-
ment that is "impermissibly inconsistent" on remand.

But that is incorrect. While the doctrine of the law of the
case "creates a presumption against a court's reexamining *its
own* rulings in the course of a litigation … [i]t has no applica-
tion to the review of rulings by a higher court." *Marseilles
Hydro Power LLC v. Marseilles Land & Water Co.*, 481 F.3d
1002, 1004 (7th Cir. 2007) (holding that a district court judg-
ment regarding a party that settled out of the case could not
prejudice the remaining parties in the litigation on appeal).
Indeed, we have repeatedly held that "[t]he doctrine of law
of the case never blocks a higher court from examining a de-
cision of an inferior tribunal." *Belbachir v. County of McHenry*,
726 F.3d 975, 978 (7th Cir. 2013) (quoting *Payne v. Churchich*,
161 F.3d 1030, 1038 n.9 (7th Cir. 1998)) (internal quotation
marks omitted). Furthermore, a party's decision "to abandon
[an opposing party] on appeal, when other [opposing par-
ties] remain in the case, is not an acknowledgement that" the
judgment as to the dropped opposing party "was sound,
and is therefore not a basis on which the remaining [oppos-
ing parties] can plead waiver or forfeiture." *Id.*

National Casualty further argues that Supreme Court
precedent requires us to bind White Mountains to the terms
of the district court's ruling, since White Mountains' settle-
ment could have been—but was not—conditioned on vaca-
tur of the district court's holdings as to Edgar County and
McFatridge. However, the nature of the case appealed here
is clearly different from the posture of the case National
Casualty relies on: *U.S. Bancorp Mortgage Co. v. Bonner Mall
Partnership*, 513 U.S. 18, 19–20 (1994). There, a creditor had
settled its entire claim against a debtor after the Supreme

Court had granted the creditor's petition for certiorari but before oral argument was heard in the Court. Even though the merits of the case were mooted by the settlement agreement, the creditor realized after settlement that the judgment of the Ninth Circuit still stood and could have a deleterious effect on the creditor's subsequent claims. The Court refused to vacate the claims, holding that "[w]here mootness results from settlement, … the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice." *Id.* at 25 (citations omitted). *Bonner Mall* stands for the principle that suitors entering complete settlement should forge thoughtful settlements before relinquishing legal remedy by appeal or certiorari; but it does not stand for the principle that a partial settlement among several, but not all, parties should tie the hands of the reviewing court. Indeed, such a principle would lead to the absurd result where White Mountains would be unable to request appellate review of the substantive underpinnings of its case against National Casualty. Unlike the creditor in *Bonner Mall*, White Mountains did not draft its settlement agreements poorly in not requesting that the judgment of the lower court be vacated. It did so in order that this live appeal could still move forward.

Furthermore, we agree with the public policy considerations raised by White Mountains. We want to encourage "the strong public policy and substantial public investment supporting the settlement process on appeal." And indeed, our circuit has held that "[t]he law generally favors and encourages settlements." *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 1013 (7th Cir. 1980).

In reviewing White Mountains' appeal, we have—as we must—the latitude and responsibility to review the district court's decisions thoroughly. We thus proceed to the merits.

**II**

We first consider whether White Mountains owes a duty to defend McFatridge and Edgar County, and whether this duty originates from the 1986 policy. The construction of an insurance policy is a question of law, so we review the district court's finding *de novo*. *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526–27 (7th Cir. 2005). To construe insurance policies, Illinois courts "take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 75 (Ill. 1997). The Illinois Supreme Court has held:

> Our primary objective in construing the language of a policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement. If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning, but if the terms are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy. Courts will not strain to find ambiguity in an insurance policy where none exists.

*McKinney v. Allstate Ins. Co.*, 722 N.E.2d 1125, 1127 (Ill. 1999) (internal citations omitted).

And it is also a generally accepted canon of construction that "[w]here an inconsistency arises between a clause that is general and one that is more specific, the latter prevails." *Alberto-Culver Co. v. Aon Corp.*, 812 N.E.2d 369, 380 (Ill. App. Ct. 2004). However, for insurance policies, at least some Illinois courts have adopted the canon that "[i]f two or more clauses within a policy conflict or are inconsistent, then the clause affording greater coverage will govern." *Abram v. United Servs. Auto. Ass'n*, 916 N.E.2d 1175, 1179 (Ill. App. Ct. 2009). This canon is consistent with the tendency of Illinois to treat "provisions that limit or exclude coverage" with some skepticism and interpret contracts "liberally in favor of the insured and against the insurer." *Koloms*, 687 N.E.2d at 75.

Against this backdrop, we are asked to interpret the White Mountains policy language to determine if it would cover Edgar County. The 1986 policy provides the following terms:

- The 1986 Policy Declaration Page, Item 1, states that the "Named Insured and Address" is "Edgar County Sheriff's Department & Edgar County, 228 North Central Avenue, Paris, Illinois 61955." The address is for the Sheriff's department.

- The "Additional Named Insured" space is blank.

- The policy, on its first page, states that "[White Mountains] will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as civ-

il damages because of wrongful acts arising out of Law Enforcement activities".

Additionally, the policy provides the following relevant definitions:

**NAMED INSURED** Means the law enforcement agency named in Item 1 of the declarations.

**INSURED** Means (A) Named Insured and all paid full or part time employees; (B) unpaid volunteers or reserves while performing law enforcement functions for the Named Insured at the Insured's request; (C) the political subdivision in which the Named Insured is located, should such subdivision be named in any action or suit against the Named Insured or any employee for any act, error or omission for which this policy affords protection, and elected or appointed officials or other personnel or units of the political subdivision of which the Named Insured is a unit thereof, with respect to their responsibilities to law enforcement.

**OCCURRENCE** Means an accident, including continuous or repeated exposure to conditions, which results in bodily injury, personal injury, or property damage neither expected nor intended from the standpoint of any Insured.

**WRONGFUL ACT** Means only or all of the following: Actual or alleged error, misstatement or misleading statement, omission, ne-

glect or breach of duty by the Insured individ-
ual or collectively, while acting or failing to act
within the scope of his employment or official
duties pertaining to the law enforcement func-
tions of the Insured.

We are asked to decide if Edgar County and McFatridge
are covered by a contract with this language. We believe the
answer to both questions is yes. National Casualty ekes out a
narrow victory here, in large part due to the Illinois canon of
construction that favors the insured in cases of ambiguity.

**(a) Edgar County**

While we reach the same outcome as the district court
and conclude that Edgar County is covered by the 1986 poli-
cy, we disagree with the district court's reading of the
"Named Insured" section of the declaration and the defini-
tion of the term. As National Casualty notes, Edgar County
is named in the "Named Insured" section of the policy dec-
laration. The definition section states that "Named Insured"
refers to "the law enforcement agency named in Item 1 of
the declarations." The district court concluded that Edgar
County cannot be a law enforcement agency, and relied on a
general canon of construction that "[w]here an inconsistency
arises between a clause that is general and one that is more
specific, the latter prevails." *Alberto-Culver Co.*, 812 N.E.2d at
380. However, there is a more specific canon of interpreta-
tion to be applied here: Illinois law states that "[i]f two or
more clauses within [an insurance] policy conflict or are in-
consistent, then the clause affording greater coverage will
govern." *Abram*, 916 N.E.2d at 1179. This canon comports
with the general policy Illinois follows in interpreting insur-
ance contracts "liberally in favor of the insured and against

the insurer." *Am. States Ins. Co.*, 687 N.E.2d at 75. Applying the *Abram* canon to the declaration, we can straightforwardly reach the determination that Edgar County is a named insured.

This reading is preferable to the district court's reading for two more reasons. First, the text indicating "Edgar County Sheriff's Department & Edgar County" are both Named Insureds was typed into this particular contract, while the definition clause comes from a preprinted form contract. To us, this indicates that the typed language—the language actually specific to this contract—should control, and indeed Illinois has the sensible canon that "[a] typed portion of a document prevails over a printed portion in determining the construction of a contract." *ETA Trust v. Recht*, 574 N.E.2d 4, 9 (Ill. App. Ct. 1991). Besides being sensible, the canon also squares with the policy implicit in the Illinois Supreme Court's instruction to read insurance contracts "liberally in favor of the insured" and "strictly against the insurer who drafted the policy." *Am. States Ins. Co.*, 687 N.E.2d at 75.

The second reason we interpret Edgar County to be a Named Insured is that not doing so reads the phrase "& Edgar County" completely out of the declaration, and this runs against the plain text of the contract. Illinois case law does not support reading language out of an insurance policy; in fact, it supports giving language contained within the policy its "plain and ordinary meaning." *McKinney*, 722 N.E.2d at 1127. And we agree with National Casualty's assertion that "to accept the district court's interpretation," we would have to stand by the assertion that "White Mountains specifically listed Edgar County by name under the heading 'Named Insured' for no reason at all. No conceivable reason exists for

listing Edgar County as a Named Insured if Edgar County is not, in fact, a Named Insured." (Appellee's Br. 22-23.) At worst, this is a contractual ambiguity to be construed against White Mountains. *See id.*

White Mountains asserts as a secondary argument that it is not responsible for Edgar County's defense costs because Edgar County's liability is not due to an occurrence that triggered coverage. It makes this assertion on the basis of our decision in *McFatridge I*, specifically our analysis of the Scottsdale law enforcement policy in that case. There, we held that Scottsdale's law enforcement policy did not provide coverage for McFatridge or Edgar County because the policy contained language limiting coverage to when "triggering" events occurred as well as other language limiting coverage to liability arising out of the law enforcement activities of the sheriff's department. *McFatridge I*, 604 F.3d at 339–41.

White Mountains' policy, too, is a law enforcement policy. But for reasons known best to White Mountains, the 1986 policy contains language that is quite a bit broader than the language in the Scottsdale law enforcement policy. Where Scottsdale specifies that it will pay all sums "which the *insured* shall become legally obligated to pay … because of wrongful acts … *caused by an occurrence and arising out of the performance of the insured's duties to provide law enforcement*," *McFatridge I*, 604 F.3d at 339 (second emphasis added), White Mountains agrees to "pay on behalf of the Insured all sums which the Insured shall become legally obliged to pay … because of *wrongful acts arising out of Law Enforcement activities* … ." (S.A. 139) (emphasis added.) In other words, the language provides support for a reading that the policy covers

not just the wrongful acts of Edgar County and the sheriff's department, but also the wrongful acts of others. Unlike the Scottsdale policy in *McFatridge I*, this language could validly be read to provide coverage for "all law enforcement activity simply by virtue of its taking place within Edgar County." *McFatridge I*, 604 F.3d at 340. Certainly, this is not the only reading that the policy affords; but Illinois law requires that we err on the side of interpreting the policy strictly against White Mountains in cases of ambiguity.

The more compelling argument distinguishing the White Mountains policy from the Scottsdale policy is that the Scottsdale policy is an "occurrence"-based policy, *McFatridge I*, 604 F.3d at 345, while the White Mountains policy is not occurrence-based, and instead provides professional liability coverage for claims arising out of "wrongful acts." (S.A. 139.) By its terms, it does not require an "occurrence" or "accident" to trigger coverage. "Occurrence" and "wrongful act" have distinct definitions under the White Mountains policy, and the policy declaration makes clear that it will pay for Edgar County's and the sheriff department's obligations resulting from "wrongful acts arising out of Law Enforcement activities." (S.A. 139.) Steidl's and Whitlock's claims against McFatridge arise out of covered "wrongful acts": the policy explicitly covers claims for false arrest, false imprisonment, malicious prosecution, and deprivation of rights.

For these reasons, we conclude that Edgar County is clearly insured by White Mountains under the 1986 policy. We turn to the question of whether McFatridge is covered.

**(b) McFatridge**

McFatridge is an elected state official. *McFatridge I*, 604 F.3d at 341 ("McFatridge is not an employee of the sheriff's department or the county … . The best characterization of the state's attorney is that he is a state constitutional official with jurisdiction in the county in which he is elected.") (emphasis omitted); *Madigan*, 989 N.E.2d at 171 (describing McFatridge as an "elected state official"). As applied to him, subsection (C) of the definition of "Insured" could be read two ways:

1. "elected … officials … of the political subdivision …"

   or

2. "elected … officials … or units of the political subdivision …"

Under the first, we do not think McFatridge would be covered, as he is a state elected official and not an elected official of Edgar County—although we suppose that would hinge on the level of generality at which one defines the "political subdivision" in which Edgar County is located. Under the second, McFatridge—as an elected official—would be covered by the policy. But we need not determine which of the readings is correct, as both readings are plausible. "[I]f the terms [of a policy] are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy." *McKinney*, 722 N.E.2d 1127. For this reason, we easily conclude that White Mountains owes McFatridge the duty of representation under the 1986 policy.

**III**

Having determined that White Mountains owes Edgar County and McFatridge the duty of representation, we review the district court's finding that White Mountains must reimburse National Casualty for all defense fees and costs expended since White Mountains was on notice of the underlying claims. To recover under a theory of unjust enrichment, National Casualty "must show that defendant [White Mountains] voluntarily accepted a benefit which would be inequitable for [it] to retain without payment." *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992). Under Illinois law, "[t]he theory of unjust enrichment is based on a contract implied in law… . Because unjust enrichment is based on an implied contract, 'where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'" *Id*. (quoting *La Throp v. Bell Fed. Savs. & Loan Ass'n*, 370 N.E.2d 188, 195 (Ill. 1977)). Here, the dispute involves two independent insurance companies with two independent policies. National Casualty and White Mountains never entered into a contract with each other regarding the insurance coverage of either Edgar County or McFatridge. This case presents an appropriate situation for National Casualty to invoke this equitable doctrine.

In March 2008, when Edgar County and McFatridge first made a claim for their defense costs under the 1986 policy, White Mountains' predecessor, Folksamerica, agreed to contribute to McFatridge's defense under a reservation of rights but flatly refused to contribute to Edgar County's defense costs. By June 2010, White Mountains had fully withdrawn from the limited contributions it was making to

McFatridge's defense costs—and still persisted in its refusal to contribute to Edgar County's defense costs. White Mountains never paid any of Edgar County's defense costs, and it only paid some of McFatridge's defense costs. Meanwhile, instead of fulfilling its own obligations to McFatridge and Edgar County, White Mountains allowed National Casualty to foot the bill for McFatridge's and Edgar County's defense costs. National Casualty continued to pay these defense costs under a reservation of rights until our court declared National Casualty not liable for these costs under the terms of its 1989 policy in *McFatridge I*, 604 F.3d at 345.

White Mountains has contributed an insufficient amount toward McFatridge's and Edgar County's defense costs despite being liable for these costs. Since White Mountains is liable for these defense costs, but National Casualty is not, National Casualty's contributions to the defense costs before the *McFatridge I* decision constitute a benefit to White Mountains. National Casualty made clear from the start that its contributions to McFatridge's and Edgar County's defense costs were made under a reservation of rights until its legal duties were clarified under the *McFatridge I* declaratory judgment action, so National Casualty never waived its right to recoup its contributions. *See Standard Mut. Ins. Co. v. Lay*, 989 N.E.2d 591, 596 (Ill. 2013) (holding that "when the insurer takes the position that the policy does not cover the complaint, the insurer must: (1) defend the suit under a reservation of rights; or (2) seek a declaratory judgment that there is no coverage. If the insurer fails to take either of these actions, it will be estopped from later raising policy defenses to coverage"). National Casualty has gone above and beyond its legal obligations; White Mountains has fallen short. *See Maxum Indem. Co. v. Eclipse Mfg. Co.*, 848 F. Supp. 2d 871, 884

(N.D. Ill. 2012) (noting that Illinois "law encourages insurers to [defend under a reservation of rights] when faced with a situation of debatable coverage").

As a result, we agree with the district court that it would be inequitable for White Mountains to benefit from National Casualty's attempt to do the right thing, especially since White Mountains did not do the right thing in a situation of questionable coverage and contribute to the defense costs under a reservation of rights. White Mountains is liable for the defense costs of McFatridge and Edgar County as found by the district court. National Casualty is not liable for the defense costs under *McFatridge I*, 604 F.3d at 345. We also note that there appear to be no other parties liable for McFatridge's and Edgar County's defense costs. McFatridge had previously claimed that the State of Illinois was also responsible for his defense costs, but as noted earlier, the Illinois Supreme Court has recently clarified that the State is not liable for these costs. *Madigan*, 989 N.E.2d at 173. Therefore, White Mountains alone was unjustly enriched by National Casualty's expenditures on McFatridge's and Edgar County's defense costs, and White Mountains must reimburse National Casualty for these expenditures.

## IV

For these reasons, we AFFIRM the judgment of the district court.