2019 IL App (1st) 190477-U
No. 1-19-0477
Order filed December 9, 2019

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(c)(2).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| PHOENIX INSURANCE COMPANY and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | Nos. 18 CH 8166, 18 CH 8170 |
| PELCO STRUCTURAL, LLC, | ) ) | Honorable Sophia H. Hall, |
| Defendant-Appellant, | ) ) ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Justices Pierce and Walker concurred in the judgment.

**ORDER**

¶ 1   *Held:* Trial court order granting summary judgment to insurer affirmed where insured failed to comply with policy requirements in the event of a lawsuit.

¶ 2   Pelco Structural LLC provided Exelon Business Services Company, LLC with conductor arms for use on a tollway project. When one of the arms broke, Exelon sought to recover the costs of replacing the defective arms. Pelco submitted a claim to its insurers, Phoenix Insurance Company and Travelers Property Casualty Company of America (collectively, "Phoenix"). Phoenix denied the claim on the grounds that Pelco's insurance policies covered damages to a third

party's property, not damages to Pelco's product. Two years later, Exelon sued Pelco alleging, in part, that in addition to replacement costs, Exelon's property was damaged when the conductor arm fell almost 80-feet to the ground. Pelco did not notify Phoenix of the lawsuit until two years later.

¶ 3     Phoenix sought a declaration that it had no duty to defend or indemnify Pelco for Exelon's lawsuit because Pelco failed to timely notify it of the litigation. Pelco counterclaimed, seeking a declaration that Phoenix had a duty to defend. On the parties' cross-motions for summary judgment, the trial court granted Phoenix's motion and denied Pelco's motion, finding that Pelco failed to meet the policies' notice of suit requirements.

¶ 4     Pelco argues it timely notified Exelon of the litigation on the basis that (i) the policy only required notice of a claim *or* suit, not both a claim *and* suit; and (ii) Phoenix had "actual notice" of the claim, which excused its compliance with the policy's notice-of-suit provisions. Alternatively, Pelco contends that Phoenix's denial of the claim excused it from giving notice of the lawsuit.

¶ 5     In addition to the notice provisions, the policy required, in the event of a lawsuit, that Pelco "immediately" provide Phoenix with a copy of the complaint and other relevant legal documents. Pelco failed to adhere to this provision. We affirm.

¶ 6                                    Background

¶ 7     Exelon and Pelco entered into an agreement for Exelon to purchase conductor arms for use in high voltage transmission towers on the Illinois Tollway's Elgin/O'Hare Project. In December 2014, during construction, one of the conductor arms broke and crashed nearly 80 feet to the ground. Exelon found a new supplier for the conductor arms and sought to recover about $2.5

million from Pelco for the cost of removing the defective arms and purchasing and installing replacement arms.

¶ 8 Pelco had a Commercial General Liability policy (CGL policy) from Phoenix and a Commercial Excess Liability (Umbrella) Insurance policy from Travelers. The policies covered from October 31, 2014 through October 31, 2015. The CGL policy provided Phoenix would pay money that Pelco became "legally obligated to pay as damages because of *** 'property damage' to which this insurance applies" and would have "the right and duty to defend the insured against any 'suit' seeking those damages." The policy defined "property damage" in part, as "[p]hysical injury to tangible property, including all resulting loss of use of that property." The policy excluded coverage for damages to Pelco's own products.

¶ 9 As a condition of coverage, the policy imposed duties on Pelco for an "occurrence," "claim," or "suit." The policy stated:

(a) You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.

*** 

(b) If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit' and the date received; and

(2) Notify us as soon as possible.

You must see to it that we receive written notice of the claim or "suit' as soon as practicable.

(c) You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit.

¶ 10    The policy defined an occurrence as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." And "suit" as "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal injury' to which this insurance applies are alleged."

¶ 11    In February 2015, Pelco, through its president Phil Albert, notified Phoenix of the Exelon claim. By letter dated March 10, 2015, Phoenix's representative, Laura Pytell, informed Albert that the policy did not cover the claim. Pytell's letter stated that "the cost of repairing and replacing your own product is not 'property damage' and is not deemed to have been caused by an 'occurrence' ***. The policy only provides coverage if your product has caused damage to Exelon's property. Here, there are no allegations that the Pelco's poles or divet arms physically damaged any of Exelon's cables or other property or that it suffered a loss of use of tangible property not physically injured. Rather, Exelon alleges that Pelco's welds in the arms were defective and it is seeking to be reimbursed for costs associated with inspecting and replacing the allegedly defective divet arms. Consequently, there are no allegations of damages because of 'property damage' caused by an 'occurrence' as required by the insuring agreement."

¶ 12    The letter further stated that Phoenix's position "is premised on the facts of the loss and the terms and conditions of the policy. If you disagree with our coverage position and/or have any other information or documentation that you believe would affect our coverage determination, please immediately forward those materials to [our] attention for review and consideration." Phoenix "expressly reserve[d] its right to raise any other applicable defenses as it obtains

additional information. Nothing contained herein shall be deemed a waiver on [Phoenix's] part of any defenses *** and [Phoenix] shall not be estopped from relying upon any other policy provisions or other bases to limit or deny coverage for this matter ***."

¶ 13    Two days later, Pytell spoke with Albert by phone and, according to Pytell's note. Pytell told Albert that based on the information provided to date, Pelco had not alleged "property damage." Albert told her that a claim had not been pursued, and that this was more "notice only." Pytell advised Albert that if Exelon pursued a claim or filed a lawsuit, Phoenix could re-review coverage. Pytell agreed to keep the file open.

¶ 14    On July 7, 2015, Pytell emailed Albert asking if he had been in contact with Exelon and Exelon was "still pursuing this matter." Albert responded, "Yes, I have. Yes, they are." In a later phone call Albert advised Pytell that Exelon was pursuing the matter and he was awaiting additional information. He would then determine whether Pelco needed to again present the claim to Phoenix for review.

¶ 15    Exelon, in a July 30, 2015 letter to Albert, stated it had provided Pelco with documents regarding the costs of repairing Exelon equipment damaged in the incident. Pelco did not inform Phoenix that Exelon now claimed property damage. In November 2015, Pytell's notes state that she confirmed that Exelon had not presented anything further, though Pelco "fully expect[s] a claim." Pytell decided to close the file, subject to reopening and reevaluation should a claim be filed later.

¶ 16                                    Exelon Litigation

¶ 17    Exelon filed a complaint against Pelco in federal court on January 15, 2016. The complaint, which Exelon amended, alleged breach of contract and breach of warranty, as well as damage to

Exelon equipment. In interrogatories, Exelon identified as part of its damages, the costs incurred "to perform emergency work necessary to address the initial arm failure and secure the site and to address damage to other equipment cause by the arm failure." Witness testimony indicated that the conductor arm damaged an Exelon crane.

¶ 18    Not until more than two years later, on March 17, 2018, did Pelco re-tendered its claim to Phoenix, noting that Exelon had filed a lawsuit involving property damage. Pelco asked Phoenix to reconsider its decision denying coverage on the grounds that Exelon's claim now includes damage to Exelon's property. Pelco also asked that Phoenix accept the defense of Pelco from the beginning of the litigation and sought $463,542 in attorney's fees and costs.

¶ 19    Phoenix agreed to provide a defense under a full reservation of rights and pay reasonable defense costs from the time it received notice of the lawsuit. Phoenix "reserve[d] its right to deny coverage based upon Pelco's breach of the policy conditions as it did not provide written notice as soon as practicable or send *** a copy of the summons and complaint as required by the policy." Phoenix denied Pelco's request to reconsider its denial of reimbursement for defense costs incurred from the time Exelon filed its lawsuit.

¶ 20    Phoenix and Pelco both filed declaratory judgment complaints. After a hearing, the trial court dismissed Pelco's complaint and allowed Pelco to file its answer, affirmative defenses, and counterclaims to Phoenix's complaint. The Phoenix five-count complaint sought a declaration that (i) the insurers had no duty to reimburse Pelco for its defense costs, including attorney's fees incurred before Pelco notified them of the Exelon suit (counts I and IV), (ii) the insurers had no duty to defend or indemnify Pelco for the claims made against Pelco in the Exelon suit (counts II and V), (iii) the insurers may select counsel to defend Pelco in the Exelon suit and Pelco must

reimburse them for difference between the rates Pelco's attorney charged and the reasonable rates Phoenix's attorneys would have charged.

¶ 21    Pelco's counterclaim sought a declaration that Phoenix had a duty to defend it in the Exelon litigation. Pelco also alleged breach of contract and sought damages under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2016) for Phoenix's failure to pay pre-tender defense costs.

¶ 22    The parties filed cross-motions for summary judgment. The trial court granted Phoenix's motion and denied Pelco's motion. The court found that Exelon's original cost claim was "quite different than the allegations in the lawsuit which alleges third party property damage." The court also found that the denial of coverage for the cost claim did not excuse Pelco from complying with the notice-of-suit requirements in the insurance policies. The court concluded Phoenix had no duty to defend and indemnify Pelco in the Exelon lawsuit "because of the extremely late tendering of the lawsuit." The court entered a written order granting summary judgment on counts I, II, IV and V of Phoenix's complaint. Phoenix voluntarily dismissed count III without prejudice and with leave to refile.

¶ 23                                    Analysis

¶ 24                              Standard of Review

¶ 25    Summary judgment is proper where "the pleadings, depositions and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). When both parties file cross-motions for summary judgment, they agree that no material facts are in dispute and invite a decision as a matter of law. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. We

review a decision granting summary judgment *de novo. Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 360 (2006).

¶ 26    When interpreting the language of an insurance policy, we apply the general rules governing the interpretation of contracts. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). Our primary objective involves ascertaining and giving "effect to the intentions of the parties as expressed by the language of the policy." *Valley Forge Insurance Co.*, 223 Ill. 2d at 362. The language of an insurance policy must be read according to its plain and ordinary meaning. *Crum and Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). We resolve ambiguity in favor of the insured and against the party who drafted the policy. *Baxter International, Inc., American Guarantee and Liability Insurance Co.,* 369 Ill. App. 3d 700, 704 (2006).

¶ 27                    Pelco's Duties Under the Policy

¶ 28    Pelco contends that because the policy requires notice of a claim *or* suit and not notice of a claim *and* suit, it satisfied the timely notice requirement when it notified Phoenix of Exelon's cost claim in 2014, within a reasonable time after the incident. Pelco asserts that because "or" is disjunctive, not conjunctive like "and," it only needed to give Phoenix notice of a claim or a suit, but not both.

¶ 29    A notice provision in an insurance contract constitutes a "valid prerequisite[ ]" to coverage under the policy. *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 311 (2006); *Berglind v. Paintball Business Ass'n*, 402 Ill. App. 3d 76, 85 (2010) ("notice provisions are not merely technical requirements but, rather, conditions precedent to the triggering of the insurer's contractual duties"). A notice of suit requirement in a policy enables the insurer to conduct

a timely and thorough investigation of the insured's claim, locate and participate in the defense of the insured, aids the insurer in the discovery of facts bearing on coverage, and affords an opportunity to control the litigation. *Northbrook Property & Casualty Insurance Co. v. Applied Systems, Inc.*, 313 Ill. App. 3d 457, 465 (2000). An insured's breach of a notice clause in an insurance policy by failing to give reasonable notice defeats the right of the insured to recover under the policy. *Livorsi Marine, Inc.*, 222 Ill. 2d at 312.

¶ 30     "Provisions in policies stating when the insurer must be notified of a covered occurrence have generally been interpreted to require notification of the company within a reasonable time, considering all the facts and circumstances of the particular case." *American Family Mutual Insurance Co. v. Blackburn*, 208 Ill.App.3d 281, 288, (1991); *Barrington Consolidated High School v. American Insurance Co.*, 58 Ill. 2d 278, 281 (1974). The reasonableness of notice presents a fact-specific inquiry. *Livorsi Marine*, 222 Ill. 2d at 311-12. "Factors the courts may consider in determining reasonable notice include: (1) the specific language of the policy's notice provisions; (2) the degree of the insured's sophistication in the world of commerce and insurance; (3) the insured's awareness that an occurrence as defined under the terms of the policy has taken place; (4) the insured's diligence and reasonable care in ascertaining whether policy coverage is available once the event has occurred; and (5) any prejudice to the insurance company." *Berglind*, 402 Ill. App. 3d at 86 (citing *Livorsi Marine*, 222 Ill.2d at 313).

¶ 31     Pelco argues that under the policy it only had to give notice of a claim *or* a suit, not both. If Phoenix was requiring multiple notices of both a claim *and* a suit, Pelco contends, it should have said so.

¶ 32    Phoenix argues that a "claim" and a "suit" are not the same, particularly here, where the claim and the suit did not include the same alleged damages. In addition, depending on when it knew of the claim or suit, Pelco had to provide separate notice of each as soon as practicable.

¶ 33    We need not address whether Pelco was required to provide two separate notices—first for the cost claim and then for the lawsuit—because Pelco failed to satisfy its other duties under the policy, which precludes it from coverage. As noted, under the "notice of claim or suit" provision of the policy, Pelco's duties were not limited to providing notice of claim or suit. The policy also provided that in the event of an occurrence, offense, claim, or suit, Pelco must "[i]mmediately send [Phoenix] copies of any demands, notices, summonses or legal papers received in connection with the claim or suit." Exelon filed its complaint against Pelco in January 2016; yet, Pelco failed to "immediately" send Phoenix a copy of the complaint or any other legal papers it received in connection with the lawsuit. Indeed, Pelco did not send Phoenix any documents related to the suit until after Phoenix learned, in March 2018, that Exelon had filed a complaint. Pelco's failure to provide Phoenix documents relevant to the lawsuit until more than two years after Exelon filed its complaint was a breach of the insurance agreement. Moreover, by withholding the documents, Pelco deprived Phoenix of the opportunity to discover facts, participate in the defense of the insured, and control the litigation. Thus, Pelco breached the insurance contract, which is sufficient grounds to affirm the trial court's order granting summary judgment to Phoenix.

¶ 34    Because we affirm on this basis, we do not address Pelco's other arguments that Phoenix had "actual" notice of the lawsuit or that Pelco was excused from providing notice.

¶ 35    Affirmed