NOTICE

Decision filed 04/23/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230188-U

NO. 5-23-0188

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| BETTY J. VOSS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 17-L-1229 |
| | ) | |
| CLARENCE BARNEY, JR. INC., | ) | |
| | ) | |
| Defendant and Counterplaintiff-Appellee, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DANIEL R. BARNEY, | ) | Honorable |
| | ) | Christopher P. Threlkeld, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court erred in its summary judgment determination that the two separate writings constituted one contract when the documents did not have terms that relied upon each other, and the plain language of the writings indicated they were to be treated as separate. Additionally, upon remand, the franchisor, H&R Block, must be added as a necessary party given its involvement in the transactions.

¶ 2    The plaintiff, Betty J. Voss (Voss), appeals the circuit court of Madison County's March 26, 2021, order granting partial summary judgment in favor of the defendants, Clarence Barney Jr., Inc. (CBI), and Daniel R. Barney (Barney), and the February 28, 2023, order and judgment finding in favor of the defendants and awarding damages relating to the sale of an H&R Block Tax

1

Services, Inc., a Missouri corporation, (Block) franchise in Highland, Illinois. For the following reasons, we reverse the trial court's summary judgment determination of March 26, 2021, vacate the subsequent orders entered on February 28, 2023, and we remand for further proceedings following the addition of franchisor, Block, as a necessary party.

¶ 3                                    I. BACKGROUND

¶ 4      Barney is the current owner of CBI. CBI owns and operates several Block offices. In 2015, CBI entered into discussions with Voss concerning the sale and purchase of her Block franchise located in Highland, Illinois (Highland Franchise). Voss first became a Block franchisee in 2004 when she signed the Franchise License Agreement (2004 FLA) with Block. Based upon deposition testimony, in May 2015, Block sent Voss a notice that the 2004 FLA, which based upon its terms expired on October 26, 2014, would not be renewed. Thereafter, Voss and CBI began discussing the sale of the Highland Franchise.

¶ 5      The parties eventually entered into a Letter of Intent to Transfer Franchise (LOI) on August 19, 2015. The LOI indicated that Voss was a franchisee pursuant to the 2004 FLA, that she would be transferring her franchise to Barney in exchange for $200,000, and that she intended to work for CBI and do "taxes for her clients next year." It had the monthly rent amount for the Highland office location indicated as "TBD."

¶ 6      Sometime in October of 2015, Voss and Barney, individually and as an apparent agent for CBI, executed a "Revised Contract for Purchase of Highland HR Block Franchise" (Sales Contract). Pursuant to the Sales Contract, Voss and Barney agreed that in exchange for Voss's Highland Franchise, Barney would pay Voss a total of $200,000 as follows:

> 1. Assumption of a $29,500 outstanding loan of the Highland Franchise (subject to credit approval by Block) on October 31, 2015.

2

2. Payment of $28,000.00 on March 15, 2016.

3. Payment of $71,250.00 on March 15, 2017.

4. Payment of $71,250.00 on March 15, 2018.

¶ 7     Additionally, the following terms were included:

"1) *Retention*—**The above payouts can be reduced based on retention**. Retention reduction will occur if total tax preparation drops below the purchase price. Retention reduction will be based on Tax Season 2016. The following year of payout will be reduced based on 2.5 x percentage below the above listed amount. *** Note—**If Betty works for one year (Jan 1–April 15, 2016) the retention clause will be dropped from agreement**)

2) Rent—Will agree to pay $950 per month starting Jan 1, 2016. [*sic*] through Dec 31, 2016. If Betty sells building I will move out before end of lease. No issue with parking spaces in side lot.

3) Utilities—Will agree to pay 100% of utilities starting Jan 1, 2016 for 12 months.

4) Real Estate Taxes—No real estate will be paid. Real estate taxes are to be paid by the property owner.

5) Will do all training

6) We will pay for all supplies after we reach agreement.

7) Will pay for all training and licensing of all tax pros and CSP's.

8) Will pay all salary during Emerald Advance period for all employees (including Betty)

9) All income taken in up to Jan 1, 2016 will be Betty's income.

# All payments will be guaranteed by myself and my corporation Clarence Barney Jr Inc."

¶ 8 Then, subsequent to the formation of this Sales Contract, a "Tax Professional Employment Agreement" (Employment Agreement) was entered into on January 4, 2016, between Voss and CBI.[1] Barney signed as the representative of CBI. This agreement set the terms for Voss's employment. *Inter alia*, it set her pay at $15 an hour, with a commission rate of 15%. It set forth such provisions addressing employment termination, handling and restrictions of confidential information, post-termination covenants, non-solicitation of employees, and remedies for breach of the terms of the Employment Agreement. Important to the facts of this matter, the Employment Agreement contained the following provision under its "Remedies" clause:

"It is agreed that Block is an intended third-party beneficiary of the covenants entered into by [Voss] in Section 8, 9, 10, and 11 of this Agreement, and that Block will have an independent right to enforce those covenants without joining [CBI] as a necessary party. It is further agreed that Block will have all rights and remedies provided to [CBI] with respect to enforcement of [Voss's] covenants in Sections 8, 9, 10, and 11 of this Agreement."

¶ 9 The Employment Agreement prohibited Voss from preparing tax returns for clients of CBI for a period of five years after her employment with CBI. It permitted CBI to recover court costs, reasonable attorney fees, and expenses incurred by CBI in enforcing the Employment Agreement. Lastly, the final clause in the Employment Agreement is titled the "Entire Agreement" clause and states as follows:

"The foregoing is the entire Agreement between the parties as to the terms and conditions of [Voss's] employment, and no amendment of this Agreement will be effective unless in writing and signed by the parties. If any provision of this Agreement is invalid or

---

[1]Despite the Employment Agreement's own terms explicitly stating it was "made on" January 4, 2016, Voss offered various testimonies regarding the date of execution, including stating that the document was signed as late as August 2016.

unenforceable, such provision will be deemed to be severed and deleted, and the remainder of the Agreement will remain in full force and effect."

¶ 10 As indicated by Voss's execution of the Employment Agreement, Voss worked for CBI at the Highland Franchise for the 2016 tax year. She did not return to work for CBI in 2017. In 2017, CBI failed to make the March 15, 2017, payment as required by the Sales Contract. CBI also did not make the scheduled payment in 2018.

¶ 11 On August 29, 2017, Voss filed a two-count complaint against CBI and Barney for breach of the Sales Contract (count I), and in the alternative, for rescission of the contract (count II). CBI and Barney filed a three-count counterclaim contending that it was excused from performance of the Sales Contract because Voss materially breached first by violating the Employment Agreement and 2004 FLA. Count I of CBI's counterclaim alleged that plaintiff breached the Employment Agreement by violating certain restrictive covenants. Count II of CBI's counterclaim alleged similar violations of the 2004 FLA and its non-compete clause. Count III of CBI's counterclaim contained an allegation of tortious interference with a business expectancy. Both parties sought money damages. A part of the money damages claimed by the defendants included the loss of profits for the Highland Franchise. Voss requested portions of said profits be held in a constructive trust. Additionally, the defendants' counterclaims and affidavit contend that various agreements and contracts related to the Highland Franchise between the parties and Block must be interpreted and read in conjunction with the Sales Contract and Employment Agreement. Further, the purported Highland Franchise sold in the Sales Contract is a franchise licensed to Voss through a 2004 FLA signed on December 4, 2004, between Voss and Block. This FLA allowed Voss to operate the Highland Franchise and required any transfer of the franchise to be approved by Block. Furthermore, the 2004 FLA in paragraph 6, titled "Royalties; Reports," required that the

5

"Franchisee shall pay Block royalties on Franchisee's Gross Receipts in each calendar year in the following amounts and at the times specified below: ***" Block is not a named party in this matter and was never served with summons.

¶ 12   Following the initial filings in the underlying lawsuit, CBI filed its motion for summary judgment on July 31, 2020. Voss subsequently filed a memorandum in opposition. The circuit court issued an order on March 26, 2021, finding that the Sales Contract and the Employment Agreement were parts of the same transaction, that Voss materially breached the Employment Agreement, and thus, CBI was entitled to summary judgment on count I of Voss's complaint and counts I and III of CBI's counterclaim. Voss filed a motion to reconsider which was subsequently denied.

¶ 13   A bench trial was held on the remaining issues on January 18, 2023. The circuit court entered its order following the trial on February 28, 2023. In that order and judgment, the circuit court found that in 2015, CBI and Voss negotiated a sale of the Highland Franchise and Voss's retention as a tax professional working for CBI. The court found that retention of a former franchise owner was "commonplace when CBI purchased [Block] franchises, and CBI considered it a valuable tool to the performance of the franchise." The circuit court also found that in the late summer or early fall of 2016, CBI moved from the Highland office to a new office. It found that this was a "planned move and one required by [Block]." The court found that during this move, Voss took a large number of client files belonging to CBI, which still had not been returned. Additionally, the majority of the missing files were for clients whom Voss and her daughter completed tax returns for in previous years. The circuit court then awarded damages, costs, and fees to CBI.

6

¶ 14    Voss then filed this timely notice of appeal on March 23, 2023. Additional relevant facts will be discussed below where applicable.

¶ 15                                    II. ANALYSIS

¶ 16                    A. March 26, 2021, Summary Judgment Determination

¶ 17    We first turn our attention to the circuit court's March 26, 2021, decisions on the parties' motions for summary judgment.

¶ 18    "Our review of the circuit court's grant of summary judgment is *de novo*. [Citation.] Summary judgment is properly granted where 'the pleadings, depositions, admissions, and affidavits on file, when taken together in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.' [Citation.] The function of a reviewing court on appeal from a grant of summary judgment is limited to determining whether the trial court correctly concluded that no genuine issue of material fact was raised and, if none was raised, whether judgment as a matter of law was correctly entered. [Citation.] In situations where both parties file cross-motions for summary judgment, 'they agree that no material issue of fact exists and that only a question of law is involved.' [Citation.] Thus, 'the court is invited to decide the issues presented as a question of law.' [Citations.] However, 'the mere filing of cross-motions for summary judgment does not require that the court grant the requested relief to one of the parties where genuine issues of fact exist precluding summary judgment in favor of either party.' " *State Farm Insurance Co. v. American Service Insurance Co.*, 332 Ill. App. 3d 31, 36 (2002).

Importantly, we remember that "[s]ummary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 19     The circuit court in its order for summary judgment made the following findings:

"(1) The circuit court found that Voss's count II seeking rescission of the contract was not an available remedy because rescission is an equitable remedy only available where no other adequate remedy at law exists, and Voss had an adequate remedy at law as evidenced by her seeking damages in count I of her complaint.

(2) The circuit court found that the 2004 FLA was not applicable to the lawsuit. It found that the 2004 FLA expired on October 26, 2014, by its own terms. It found that the restrictions on Voss only restricted her for a period of two years, and thus, because the alleged wrongful action took place in 2017, the restrictions had timed out and were no longer applicable in 2017. Further, it found that the argument that the 2004 FLA contract could not be enforced by CBI, who was not a named party to it, was 'moot.'

(3) The circuit court then addressed the issue of whether the Sales Contract and Employment Agreement should be considered two separate contracts or two separate writings to the same transaction, and thus, one contract. It determined that the writings should be treated as one contract. For its reasoning, it stated that 'Because [Voss's] own testimony is at odds with [her] argument' put forth in her summary judgment pleadings, 'the court finds that the Employment Agreement is a part of the same transaction and must be considered together with the [Sales Contract].'

8

(4) The circuit court then found that Voss violated the Employment Agreement's restrictive covenants by completing tax returns for Block clients in 2017 which she had handled at the Highland Franchise in the previous years.

(5) As a result, the circuit court then found as a matter of law that the plaintiff materially breached the Employment Agreement, and that CBI was entitled to summary judgment on count I of Voss's complaint and count I and III of the counterclaim."

¶ 20    Interestingly, the circuit court, when articulating its determination, recited a number of factual disputes by the parties as to when the Employment Agreement was signed, despite acknowledging that the Employment Agreement stated: "This Agreement is made on Jan. 4, 2016, between Betty Voss *** and Clarence Barney Jr. Inc. ***." It also recited various factual disputes by the parties as to whether the Employment Agreement was enforceable.

¶ 21    We find that the above findings were made in error. Whether a breach of contract has occurred generally is not a legal question subject to *de novo* review, but rather a question of fact which will not be disturbed unless the finding is against the manifest weight of the evidence; however, the legal effect and interpretation of a contract is a question of law. *Covinsky v. Hannah Marine Corp.*, 388 Ill. App. 3d 478, 483 (2009). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)).

¶ 22    Here, the central issue of the motions for summary judgment was whether the two writings were separate contracts or constituted one contract. This was the central issue because that determination would impact all other issues being raised. The issue of whether the Sales Contract and Employment Agreement were part of the same transaction and constituted a single contract is

a purely legal question and one that is appropriate for summary judgment determination. Unfortunately, the circuit court erred in its finding that the two writings were part of the same transaction.

¶ 23 " 'A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent.' " *Village of Kirkland v. Kirkland Properties Holdings Co., LLC I*, 2023 IL 128612, ¶ 63 (quoting *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007)). "Illinois courts follow the 'four corners' doctrine when interpreting contracts, looking primarily to the language of the contract to determine whether it is susceptible to more than one meaning." *Alberto-Culver Co. v. Aon Corp.*, 351 Ill. App. 3d 123, 136 (2004). "Generally, parol evidence is inadmissible to vary the terms of a written instrument unless the language used is ambiguous or incomplete." *Id.* As a result, we first look to the language of the contracts to see if they explicitly reference, rely upon, or require the other or are ambiguous in a way that would suggest looking at other evidence is necessary.

¶ 24 Here, we first look to the Sales Contract. The Sales Contract in no way requires the employment of Voss. It sets forth her commission amount should she decide to work for CBI. And importantly, in bold text, it states, "***If* Betty works for one year (Jan 1–April 15, 2016) the retention clause will be dropped from agreement**." (Italics added for emphasis.) The word "If" is a clear indicator that the sale of the Highland Franchise was in no way contingent upon her employment. This was expressly admitted to by Barney during his deposition:

"Q: Pursuant to [the Sales Contract], [Voss] was obligated to work for the 2016 year, correct?

A: I wanted her to work for 2016, correct. *Is she obligated? No. She's not obligated.*" (Emphasis added.)

10

¶ 25    Thus, there is no indication from the language of the Sales Contract that another writing is necessary to complete or finalize the transaction, or that another writing would necessarily flow from it.

¶ 26    Turning now to the Employment Agreement, the separate nature of the contracts becomes even more clear. First, Barney again testified in his affidavit regarding the nature of this particular writing:

> "The [Employment Agreement] is the employment agreement between CBI and Voss for the period of January 1, 2016[,] through January 1, 2017. *Each employee is required to execute an employment agreement identical to the one signed by Voss*. The employment agreements are annual and must be renewed each year." (Emphasis added.)

¶ 27    This testimony is further bolstered by section 12, subpart (g) of the 2004 FLA which requires the franchisee to have certain employees sign these employment contracts:

> "(g) Franchisee shall require and cause each person employed in the Franchised Business in a supervisory capacity or employed to prepare tax returns to execute an agreement, *in the form prescribed by Block*, *containing covenants similar to those set forth in this Section 12*. Franchisee shall promptly provide Block with a copy of each such fully executed agreement." (Emphasis added.)

It is therefore evident from the face of this writing and the testimony above that this writing is a standardized boilerplate employment agreement that every tax professional who works for a Block franchise signs as a condition of their employment. In other words, this writing is not a part of the transaction of selling the Highland Franchise as CBI contends but is a separate contract relating to and required by her employment at a Block franchise. As we noted above, Voss's employment

11

was not a condition or term of the Sales Contract. Moreover, the final paragraph of the Employment Agreement explicitly states what the foregoing logically implies. It reads as follows:

"21. **Entire Agreement**. The foregoing is the entire Agreement between the parties as to the terms and conditions of [Voss's] employment, and no amendment of this Agreement will be effective unless in writing and signed by the parties. ***"

Therefore, by its own terms, the Employment Agreement must be construed as its own separate and distinct contract and not part of any other.

¶ 28 As a result of the above, the circuit court's determination that the two writings were one contract was error. We now reverse that decision. In light of this ruling, all the other determinations relating to the motions for summary judgment were considered and determined by the circuit court under an improper finding of law. Further, the majority of those findings were not legal determinations, but were improper factual findings at the summary judgment stage.

¶ 29 Therefore, we vacate those findings so that they may be redetermined in light of our determination that the contracts must be treated separately; and additionally, reiterate that summary judgment determinations are only appropriate where no genuine issue of material fact exists. "[T]he mere filing of cross-motions for summary judgment does not require that the court grant the requested relief to one of the parties where genuine issues of fact exist precluding summary judgment in favor of either party." (Internal quotation marks omitted.) *State Farm Inurance Co.*, 332 Ill. App. 3d at 36.

¶ 30                    B. February 28, 2023, Bench Trial Determination

¶ 31 As a result of the error of the circuit court as discussed previously, the subsequent determinations made in the circuit court's February 28, 2023, order following the bench trial must also be vacated.

12

¶ 32                          C. Block as Necessary Party

¶ 33    Finally, we address one additional issue not raised by the parties. Following review of the matter and all relevant materials, we have determined that Block is a necessary party to this litigation that was not made a party to the proceedings before us. It is well established that a "trial court [can] not reach the merits unless and until all owners and lessees, necessary and indispensable parties, were made parties to the proceedings." *Ragsdale v. Superior Oil Co.*, 40 Ill. 2d 68, 71 (1968). "[A] necessary party is one who has such an interest in the matter in controversy that it cannot be determined without either affecting that interest or leaving the interest of those who are before the court in a situation that might be embarrassing and inconsistent with equity." *Georgeoff v. Spencer*, 400 Ill. 300, 302-03 (1948). Stated differently, "[a]ll persons are necessary or indispensable parties to the litigation who have an interest in the subject matter which will be materially affected by the decree." *Moore v. McDaniel*, 48 Ill. App. 3d 152, 156 (1977) (citing *Mortimore v. Bashore*, 317 Ill. 535 (1925); *Safeway Insurance Co. v. Harvey*, 36 Ill. App. 3d 388 (1976)).

¶ 34    Briefly, we discuss the terminology relating to necessary and indispensable parties as we have used it below.

"Illinois has never adopted the term 'indispensable party,' using only the term 'necessary' in referring to the joinder of a party. The Code of Civil Procedure uses the term 'necessary plaintiff' in section 2-404; section 2-405(a) speaks in terms of a defendant who has 'an interest in the controversy'; section 2-406(a) does not use a particular term but merely states that '[i]f a complete determination of a controversy cannot be had without the presence of other parties, the court may direct them to be brought in.' (Ill. Rev. Stat.

13

1989, ch. 110, pars. 2-404, 2-405(a), 2-406(a).)" *Safeco Insurance Co. of Illinois v. Treinis*, 238 Ill. App. 3d 541, 545 (1992).

¶ 35   Federal courts have articulated distinct definitions for "necessary party" and "indispensable party." We use only the term "necessary party" party below so as to stay in line with Illinois law; however, where case law references "indispensable party," we have left it for accuracy. But for our purposes, here, the terms are being used interchangeably.

¶ 36   "A necessary party has been defined as ' "one who has a legal or beneficial interest in the subject matter of the litigation and will be affected by the action of the court." ' [Citations.] For the most part, the caselaw has analyzed the concept functionally, in terms of the reasons such parties must be joined. There have been enumerated three reasons to consider a party 'necessary' such that a lawsuit ought not to proceed in his or her absence: (1) to protect an interest which the absentee has in the subject matter of the controversy which would be materially affected by a judgment entered in his absence; (2) to protect the interests of those who are before the court; or (3) to enable the court to make a complete determination of the controversy. [Citations.]" *Holzer v. Motorola Lighting, Inc.*, 295 Ill. App. 3d 963, 970 (1998).

¶ 37   Here, Block is a necessary party for multiple reasons. Turning to the first consideration, "to protect an interest which absentee has in the subject matter of the controversy which would be materially affected by a judgment entered in his absence," we see that Block will be materially affected by the judgment because the circuit court intended to award lost profits. The 2004 FLA that Voss signed indicated that as a part of a franchisee's licensing agreement with Block, CBI is required to give an accounting of any awarded profits and pay a portion of those profits as royalties.

14

One could argue that Block may be bound by the trial court's determination of lost profits, and, thus, a judgment in this matter will materially affect Block.

¶ 38   Additionally, Block has other interests which are at stake as well in this lawsuit which may be materially affected. Specifically, the plaintiff, in count II of her complaint, seeks recission of the contract and a return of the parties to positions prior to the transfer of the franchise. Block as franchisor would appear to have a material interest in who owns and operates its franchise.

¶ 39   Examining the second consideration, "to protect the interests of those who are before the court," both Voss and CBI (depending upon the outcome of their lawsuit) could face lawsuits from Block for breach of the FLAs and/or the Employment Agreement those parties have signed. Specifically, the Employment Agreement at issue contains a provision wherein:

> "It is agreed that Block is an intended third-party beneficiary of the covenants entered into by [Voss] in Sections 8, 9, 10, and 11 of this Agreement, and that Block will have an independent right to enforce those covenants without joining [CBI] as a necessary party. It is further agreed that Block will have all rights and remedies provided to [CBI] with respect to enforcement of [Voss's] covenants in Sections 8, 9, 10, and 11 of this Agreement."

¶ 40   It appears that in this provision, Block is attempting to both tie itself to the contract as a third-party beneficiary with the ability to enforce certain covenants of the Employment Agreement and do so without the inclusion of CBI (or the franchisee). Thus, it seems Block has reserved the right to seek its own recovery under its own power. This intent is also implicit at in the FLA, section 23, "Parties Not Joint Venturers":

> "Neither party hereto is or shall be construed as a joint venturer, partner, agent, fiduciary or employee of the other, and neither party shall have any power to bind or obligate the

15

other, and neither party shall be liable to any person whomsoever for any debts incurred by the other."

¶ 41 While the exact legal propriety and effect of these provisions is an issue that remains to be decided, these provisions do indicate Block's intent to be able to enforce and protect its own interest in lawsuits related to its franchisees, thus leading to the conclusion that, if not included in a lawsuit where it can articulate its own claims and positions, later litigation could soon follow against the parties who proceeded without it. Moreover, the 2004 FLA has an indemnity clause which would require the franchisee to indemnify Block from certain losses and liabilities. The provision purports to extend this indemnification both "during and after the term of this Agreement." This could additionally result in litigation against one of the parties depending upon the result of this case.

¶ 42 Therefore, when examining the second consideration as a whole, it would seem that to protect the parties from possible future lawsuits related to the same events or claims, and to protect them from possible differing awards or judgments, Block is a necessary party.

¶ 43 Finally, we turn to the third consideration which is "to enable the court to make a complete determination of the controversy." Initially, we recognize that some of the issues discussed in the second consideration could apply here as well, but for brevity, we do not repeat them.

¶ 44 Under this consideration, we note that Block has a number of potential claims against Voss and/or CBI (if CBI failed to do something it was required to under the new FLA it was required to sign)[2] that neither of those parties can properly raise. Specifically, any claims that relate to the

---

[2]While not relevant to our disposition at this stage, we note that CBI was required to authorize a new FLA with Block once the transfer of the franchise was approved. That contract does not appear in our record on appeal.

16

provisions set forth in the 2004 FLA (should it have been extended) or the new FLA, which is not before us in the record on appeal.

¶ 45     Now, we acknowledge that by its own terms, the 2004 FLA appears to have expired on October 26, 2014. And that is one of the factual determinations that the circuit court found in its March 26, 2021, order. However, this raises an important unanswered question that is likely critical to the proper and full resolution of this matter. The 2004 FLA's own terms in section 18, "Effect of Termination," state: "*Upon expiration \*\*\* of this Agreement for any reason, \*\*\* all rights of Franchisee hereunder shall end \*\*\**." (Emphasis added.) The same section also required Voss to "immediately and permanently discontinue the use, directly or indirectly, of the Licensed Marks, and all proprietary material and information and materials furnished by Block to Franchisee." So, the question left unanswered without Block's involvement is how was Voss capable of selling the Highland Franchise to CBI in November 2015, over a year after the expiration of the 2004 FLA? Also, CBI was required to authorize a new FLA according to the 2004 FLA. Did that occur? If so, did the new FLA have the same terms as the previous 2004 FLA, or different terms? As the franchisor of the Highland Franchise, Block may be in the best position to clear up the ambiguity surrounding the transfer of the franchisee rights, and it also may be the only party with proper standing to assert the covenants contained within the 2004 FLA and/or the new FLA, which is an argument put forth by Voss in her motion for summary judgment.

¶ 46     Also of note, Voss attests in the Assignment Agreement with CBI that she "is the holder of the right to prepare income tax returns under the name and service mark 'H&R Block' pursuant to the Franchise Agreement(s) described below \*\*\*." The FLA listed is the 2004 FLA. Thus, by its plain language, Voss may have misrepresented her ability to transfer and operate the Highland

17

Franchise to CBI. It would seem Block would have an important interest in such representations and whether they were true and proper.

¶ 47     Finally, one of the issues in this case is rent. One of Voss's responses to CBI's counterclaims is that CBI breached first by failing to pay rent at the end of 2016. Voss owned the building that the Highland Franchise was operating out of. So, after transfer, CBI rented the building that Voss owned. CBI claims that Block instructed CBI to move its business out of Voss's building. Once CBI was no longer occupying Voss's building, CBI allegedly stopped paying rent. This specific issue involves Block as a necessary party because if, in fact, Block required CBI to move out, then that could leave it subject to various claims by the parties. If Block did not instruct CBI to move out, Block would be able to properly refute that testimony.

¶ 48     Thus, for the foregoing reasons, when all considered together, we find Block is too intertwined with the various at-issue activities for it to not be considered a necessary party. Without Block, the court simply cannot reach a full and final decision as to the issues before it.

¶ 49                                    III. CONCLUSION

¶ 50     Based upon the foregoing, the circuit court's orders of March 26, 2021, and February 28, 2023, are reversed in part and vacated in part, and the matter is remanded to the circuit court for further proceedings consistent with the findings herein once all necessary parties have been joined.

¶ 51     Orders reversed in part and vacated in part; cause remanded.